496 A.2d 1249

**In the Matter of the Petition of Jessica Claire SCHIDLMEI-ER, a Minor, by Paul M. KOSLOF, her Father, for Change of Name to Jessica Claire Koslof.**

**Appeal of Dona SCHIDLMEIER, Natural Mother of Jessica Claire Schidlmeier.**

Superior Court of Pennsylvania.

Argued March 28, 1985.

Filed Aug. 9, 1985.

564

Felix Deguilio, Pittsburgh, for appellant.

Theodore F. Huckestein, Jr., Pittsburgh, for appellee.

Before MONTEMURO, ROBERTS and BLOOM, JJ.*

ROBERTS, Judge:

This appeal challenges the trial court's order changing a minor child's name from Jessica Claire Schidlmeier, as designated on her duly registered birth certificate, to Jessica Claire Koslof. The court granted the change on the petition of appellee Paul Koslof, Jessica's father, over the opposition of appellant Dona Schidlmeier, Jessica's mother. We reverse the order changing Jessica's surname.

Paul Koslof and Dona Schidlmeier were married on December 19, 1981. At the time of the marriage, Dona also had a seven-year-old daughter, Jeanette Schidlmeier, who is not Paul's child. On February 22, 1982 Paul and Dona separated. Both parties then knew that Dona was pregnant. The court found that Dona used the name Koslof before the separation and her birth name, Schidlmeier, after the separation.

Jessica was born on July 28, 1982 in Allegheny County, five months after her parents separated. Dona chose the name Jessica Claire Schidlmeier and a birth certificate bearing that name was recorded with the Department of Health. Approximately two days after Jessica was born, Dona informed Paul of Jessica's birth. Paul went to the hospital that evening and learned that both Dona and Jessica were registered at the hospital under the name Schidlmeier.

* Judge Louis A. Bloom, Senior Judge of the Court of Common Pleas of Delaware County, Pennsylvania, is sitting by designation.

On February 15, 1984, more than 18 months after Jessica Schidlmeier's birth certificate was recorded, Paul filed a petition to change Jessica's surname to Koslof. In April 1984, at the time of the hearing on the petition, Jessica was 21 months old and had lived with her mother and Jeanette since birth. A divorce action filed by Paul was then pending, Paul had partial custody of Jessica, and Paul was regularly making payments for support of Dona and Jessica pursuant to court order.

Appellant raises four arguments on this appeal: (1) that the noncustodial parent of a minor child does not have standing to petition to change the child's name, (2) that the custodial parent has the right to choose a newborn child's name pursuant to Health Department regulations, (3) that appellant was acting in the child's best interests by giving the child a surname of her choice, and (4) that granting the father a primary right to choose a child's surname is contrary to the 1971 Equal Rights Amendment to the Pennsylvania Constitution, Article I, § 28.[1]

**1.** Appellant contends that the court's order granting the name change was based on an invalid presumption that a child must bear her father's surname, unless the mother can overcome the presumption with compelling arguments. She urges that such a rule of decision unconstitutionally discriminates against the mother, based purely on her sex. In support of her position, she cites the holdings of our Supreme Court that rejected the "tender years" doctrine as offensive to the concept of equality of sexes embraced by the ERA. See *George v. George,* 487 Pa. 133, 409 A.2d 1 (1979); *Commonwealth ex rel. Spriggs v. Carson,* 470 Pa. 290, 368 A.2d 635 (1977) (plurality). Appellant also relies on the Court's adoption of the rule that the support of children is the equal responsibility of both mother and father, see *Conway v. Dana,* 456 Pa. 536, 318 A.2d 324 (1974). She further argues that the trial court's decision is contrary to that in *In re: Stinespring,* 131 P.L.J. 560, 562 (1982), in which the court stated that the father has no constitutional right to have a child bear his surname. Appellant also notes that one commentator has suggested that although a court may consider the effect of a name change on the father-child relationship, it must give equal weight to the mother-child relationship. See Comment, *Surname Alternatives in Pennsylvania,* 82 Dick.L.Rev. 101, 115 (1977).

However, in light of our determination that appellee did not carry his burden of establishing that the name change he requested would be in Jessica's best interests, we need not reach appellant's constitutional argument. See *Ballou v. State Ethics Commission,* 496 Pa. 127,

 Appellant asserts that the custodial parent has an absolute right to determine the surname of a minor child in his or her care. She likewise contends that the noncustodial parent has no standing to petition to change a name properly registered on the child's birth certificate. Although it is unusual for a noncustodial parent to petition to change a child's name, we are unpersuaded that appellee lacks standing to institute such a proceeding. Cf. *Franklin Township v. Commonwealth of Pennsylvania*, 500 Pa. 1, 452 A.2d 718 (1982).

Turning to the merits of the controversy, we must determine whether the court erred in ruling that appellee established the right to the relief he requested, the change of his daughter's surname. We consider first the circumstances surrounding the initial choice of Schidlmeier as Jessica's surname.

The parties do not dispute that Jessica was born in wedlock, to separated parents. There is no question that Dona has cared for Jessica since birth, nor any suggestion that Paul ever sought or desired full custody of Jessica. At the time of Jessica's birth, Dona chose her own birth name, Schidlmeier, as Jessica's surname, and a birth certificate recording that name was filed with the Pennsylvania Department of Health.

 Section 1.7 of Title 28 of the Pennsylvania Code sets forth the manner in which a surname is to be chosen for a child born in wedlock:

§ 1.7. Registration of children born in wedlock.

(a) The designation of a child's name, including surname, is the right of the child's parents. Thus, a child's surname as recorded on its birth certificate may be the surname of either or both of the child's parents, a surname formed by combining the surname of the parents in

129, 436 A.2d 186, 187 (1981) (when a case raises both constitutional and nonconstitutional issues, a court should not reach the constitutional issue if the case can properly be decided on nonconstitutional grounds.)

hyphenated or other form, or a name which bears no relationship to the surname of either parent.

(b) If the parents are divorced or separated at the time of the child's birth, the choice of surname rests with the parent who has custody of the newborn child.[2]

The trial court dismissed Section 1.7(b) as not relevant to the question of Paul's attempt to change Jessica's surname. The court concluded that the regulation is of no support to appellant because it is intended merely to facilitate the registration of births. We do not regard Section 1.7(b) as irrelevant, particularly since the record shows that appellee learned Jessica had been named Schidlmeier when he first visited the hospital after her birth, but did nothing to contest the name for 18 months.[3]

▮ Surely a child must be given a name at birth. The policy embodied in Section 1.7(b) fairly and practically allocates the responsibility for choosing a newborn child's surname. The custodial parent generally has the right to make major decisions affecting the best interests of a minor child. See 23 P.S. § 1003.

▮ The court also believed that appellant's interpretation of the regulation would grant the mother an absolute right to name the child in all cases, "since in the nature of things the mother gives birth to the child and obviously has custody thereof." The court's construction of the regulation incorrectly equates "physical custody" with "legal cus-

---

2. The Vital Statistics Law imposes on the Department of Health, pursuant to the Administrative Code of 1929 (see 71 P.S. § 534), the duty to install and maintain a statewide system of vital statistics. 35 P.S. § 450.201(2). The act requires the filing of a certificate of each birth occurring in the Commonwealth. 35 P.S. § 450.401.

3. In a case involving a contested name change petition, the California Supreme Court rejected the rule that a father has a primary right, as against the mother, to choose a child's surname. *In re Marriage of Schiffman,* 28 Cal.3d 640, 620 P.2d 579, 169 Cal.Rptr. 918 (1980). In a separate concurring opinion, Justice Mosk stated that: "The principle that the custodial parent should be given the choice of a newborn child's surname has been codified by the Pennsylvania Legislature. (Pa.Code, tit. 28, § 1.7(b) (1975).)" *Id.* at 649, 620 P.2d at 585, 169 Cal.Rptr. at 924 (1980) (Mosk, J., concurring).

tody". See 23 P.S. § 1003. Although the child may be in the mother's physical custody, legal custody may well rest with the natural father in cases of death or disability of the mother, agreement between the parents, or perhaps by court order. Read in the context of statutory and case law, "custody" as used in Section 1.7(b) clearly contemplates "legal custody." In any event, here, the mother has had continuous custody of the child since birth.

■ On this record we hold that appellee had the burden of coming forward with evidence that the name change he requested would be in Jessica's best interest. Cf. *Laks v. Laks*, 25 Ariz.App. 58, 540 P.2d 1277 (1975) (name on child's birth certificate is prima facie correct, burden on petitioning parent to go forward with the evidence and show that name change would be in the best interests of the child).

■ The child's best interests unquestionably must control in a proceeding to change a minor child's surname. See *Petition of Christjohn*, 286 Pa.Super. 112, 428 A.2d 597 (1981), cf. *Commonwealth ex rel. Robinson v. Robinson*, 505 Pa. 226, 232–233, 478 A.2d 800, 804 (1984) (the ultimate issue in a custody contest between parents is determining the best interests of the child); *Conway v. Dana*, 456 Pa. 536, 318 A.2d 324 (1974) (child support matters are primarily concerned with the best interests of the child).[4] In the case

---

**4.** The best interests rule has been widely accepted in the context of petitions to change a minor child's name. See e.g., *In re Marriage of Schiffman*, 28 Cal.3d 640, 647, 620 P.2d 579, 583, 169 Cal.Rptr. 918, 922 (1980) ("[T]he rule giving the father, as against the mother, a primary right to have his child bear his surname should be abolished. Henceforth, as in parental custody disputes, the sole consideration when parents contest a surname should be the child's best interest."); *In re Marriage of Presson*, 102 Ill.2d 303, 80 Ill.Dec. 294, 296, 465 N.E.2d 85, 87 (1984) ("[A] change in a minor's surname shall be allowed only when the court finds that the change is in the best interests of the minor."); *Application of Saxton*, 309 N.W.2d 298, 302 (Minn.1981), *cert. denied*, 455 U.S. 1034, 102 S.Ct. 1737, 72 L.Ed.2d 152 (1982) ("No preference is accorded either the paternal or maternal surname.... When one parent seeks to change the surname of a child, the other parent has standing to object and the resolution of the dispute hinges on the best interests of the child."); *Cohee v. Cohee*, 210 Neb. 855, 317 N.W.2d 381, 384 (1982) ("[E]ach parent has an equal right and interest in determining the surname of a child.... [T]he

of a contested petition to change a child's name, the court must carefully evaluate all the relevant factual circumstances to determine if the petitioning parent has established that the change is in the child's best interests. This the court must do without according a presumption in favor of either parent. See *In re Marriage of Schiffman,* 28 Cal.3d 640, 647, 620 P.2d 579, 583–84, 169 Cal.Rptr. 918, 922–23 (1980); *In re Marriage of Presson,* 102 Ill.2d 303, 80 Ill.Dec. 294, 297, 465 N.E.2d 85, 88 (1984); *Application of Saxton,* 309 N.W.2d 298, 301 (Minn.1981), *cert. denied,* 455 U.S. 1034, 102 S.Ct. 1737, 72 L.Ed.2d 152 (1982); *Cohee v. Cohee,* 210 Neb. 855, 317 N.W.2d 381, 384 (1982).

◼ Here it is to be noted that there had been no change in relevant circumstances between the time Jessica's surname was recorded on her birth certificate and the time when the hearing on her father's petition was held. Jessica was 21 months old at the time of the hearing, and had borne the name Schidlmeier since birth. The parties remained separated,[5] and Jessica continued to live with her mother and sister, who both bore the name Schidlmeier. Appellee continued to visit the child regularly, and no change was contemplated in custody arrangements.

Appellee's petition merely alleges generally that it would be in Jessica's best interests to bear the paternal surname, a position disputed by Jessica's mother. In ruling on the petition the court decided that: "There being no compelling reason why tradition and custom should not be followed, the petition for change of name will be granted." Appellee's allegation does not meet his burden of proof. Nor is the court's rationale legally sufficient to sustain a conclusion that the name change appellee seeks is in the child's best interests.

standard to be used ... is the best interests of the child."); *In re Fletcher,* 145 Vt. 209, 486 A.2d 627, 629 (1984) (court should "determine what is in the best interests of the child, and then decide ... whether the requested name change is warranted").

5. A divorce action, filed after Jessica was born, was pending at the time of the hearing.

Review of all the relevant circumstances convinces us that appellee has failed to establish that the change he requests is in the best interests of the child. In the absence of such proof the court's order is without support and may not stand. Accordingly, the court's order granting change of name must be reversed.