## Sanders v. Funk

C.P. of Fulton County, no. 50 of 2000-C.

*Stephen D. Kulla,* for plaintiff.
*Tamela Mellott-Bard,* for defendant.

VAN HORN, *J.,* April 28, 2000—

## PROCEDURAL AND FACTUAL BACKGROUND

This matter comes before the court on a petition filed by Michael R. Sanders, biological father of Kaitlyn Adelle Ramsey, born October 19, 1999, requesting a change of name for the child to Kaitlyn Adelle Sanders.

Kaitlyn's parents, Michael R. Sanders and Naomi Funk, met while students at Juniata College. They began an intimate relationship in the fall of 1998 and Naomi advised Michael of her pregnancy shortly thereafter.

Michael accompanied Naomi to one of her doctor's appointments prior to her leaving school without notification to Michael and moving back to the McConnellsburg area. Michael finished the spring semester at Juniata College but did not return to school in the fall of 1999.

Shortly after Naomi returned to the McConnellsburg area she resumed a relationship with Jason Ramsey whom she has known for more than seven years. They began sharing a home together in May of 1999. Jason was supportive of Naomi throughout her pregnancy and apparently had reason to believe that he may be the biological father of her child. At the time of Kaitlyn's birth, he signed an acknowledgment of paternity at the hospital.

Naomi and Jason purchased land together in September of 1999 and are building a house. They also have started a business together with Naomi doing the secretarial work for the business. While both Naomi and Jason testified as to their plans to marry in the future, no definite wedding date has been set.

Naomi wishes the child's surname to remain "Ramsey" because she and Jason plan to have children in the future that will have the Ramsey name and because there are several mementos from Kaitlyn's birth which are personally monogrammed with the Ramsey surname.

It was unclear from the evidence presented at the hearing held on April 18, 2000, as to the number of contacts between Michael and Naomi throughout her pregnancy, although Naomi did admit that Michael had telephoned her "a few times" but she was not really sure that he was going to be involved in the child's life.

In the fall of 1999, Michael obtained legal counsel to pursue custodial rights of his yet unborn child. He also sent correspondence through his attorney to Naomi at her parents' home requesting that he be permitted to be

involved with the birth of his child, be notified at the time of the child's birth and requested that the "Sanders" surname be given to the child. Naomi's parents chose not to give her that letter until after the birth of Kaitlyn for fear that it may upset her. In subsequent correspondence from Naomi's attorney, she advised that she was denying that Michael was the father and that Jason was assuming the parental role. It was Naomi that required the paternity testing that ultimately confirmed Michael's paternity of Kaitlyn.

Under the current custody order, Michael is seeing Kaitlyn each Saturday from 8 a.m. until noon and testified that he wants as much time with his daughter as possible although he is not challenging Naomi's role as primary custodian. Naomi acknowledged that when Kaitlyn is no longer nursing she would expect Michael to have more time with her.

No negative connotations to the "Sanders" surname were indicated at the time of the hearing and the same is true of the "Ramsey" surname.

## DISCUSSION

This petition is brought pursuant to 54 Pa.C.S. §702. While the statute provides for the procedure to pursue a change of name, no criteria are contained in the statute for the court to consider when exercising its discretion upon such a petition. In the case of *Falcucci Name Case,* 355 Pa. 588, 592, 50 A.2d 200, 202 (1947) the Supreme Court stated that petitions for a change of name must be reviewed by the court in a way "to comport with good sense, common decency and fairness to all concerned and to the public." It is also well settled that the court must determine whether a change of name is in the child's best interest and further, that the petitioner must bear the

burden of proving that the change of name would be in the best interest of the minor child. *In re Zachary Thomas Andrew Grimes,* 530 Pa. 388, 609 A.2d 158 (1992).

Each case must turn on the particular factual circumstances of the situation and no definitive case law applicable to the facts of this case was presented by either party. Naomi urges the court to follow the reasoning of *Petition of Schidlmeier,* 344 Pa. Super 562, 496 A.2d 1249 (1985), where the child was born during wedlock but after the parties had separated. Mother gave the child her last name which was not the name of the child's father. Father paid support and had regular contact with the child but the child primarily resided with her mother in a family unit consisting of mother, daughter and half-sister. Father brought the petition to have the child's surname changed to his name 18 months after the child was born. The petition was denied. This case is certainly distinguishable since the critical fact in the case before the court for decision is that Kaitlyn's surname is that of her mother's boyfriend and Kaitlyn does not bear the surname of either her mother or father. While the court does not doubt the testimony of Naomi and Jason as to their plans *at this time,* there is no proven commitment of the two through marriage and the court is troubled by Kaitlyn bearing the Ramsey surname when her mother has not taken steps through marriage to change her own surname to that of "Ramsey."

Naomi doubts Michael's intentions in requesting the change of name and feels that he may be embarrassed by his child bearing the name of another man. It is equally probable that Naomi is embarrassed to have her child bear the "Sanders" surname due to her efforts to hold this child out to the world as the child of Jason Ramsey.

While Naomi may have doubted Michael's commitment to the child early in her pregnancy, it is uncontroverted that Michael took all necessary steps to assert parental rights even prior to the birth of the child by hiring an attorney to pursue custody rights. When met with resistance by Naomi who contested his paternity, he proceeded with blood tests to establish that he is the biological father of Kaitlyn. He also has promptly proceeded through the courts to attain custodial rights with his daughter. Michael made his wishes known prior to the birth of his daughter that she be given his surname and just four months after her birth pursued the matter through the court by the filing of the petition which brings this matter to court for decision.

In following the guidelines of the Pennsylvania Supreme Court as stated in the *Falcucci* case, *supra*, we must look at this matter with good sense, common decency and fairness to all. It is this court's judgment that Kaitlyn should not have the surname of a person who is unrelated to her in any manner and that to continue her surname of Ramsey is misleading to her as well as the public since Mr. Ramsey has absolutely no legal relationship to the child. The court must also consider the natural bond that exists between Michael and Kaitlyn, and the child's right to feel connected to her biological parent by the sharing of a surname as being in her best interest.

For all of these reasons, the court will grant the petition of Michael R. Sanders requesting the change of name for his daughter Kaitlyn Adelle Ramsey who shall hereafter be known as Kaitlyn Adelle Sanders.

## ORDER

And now, April 28, 2000, upon consideration of the petition of (sic) change of name filed in the above-cap-

tioned matter and after hearing held on the same, it is hereby ordered that the name of Kaitlyn Adelle Ramsey shall be changed and that she shall hereafter be known as Kaitlyn Adelle Sanders. The parties are directed to take all necessary steps to effectuate the name change on the child's legal records.