IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
ASSIGNED ON BRIEFS JULY 31, 2009

## LARANDA CONNER v. ROBERT KING, II

### Direct Appeal from the Juvenile Court for Madison County
No. 40-0414      Christy Little, Judge

_____

### No. W2009-00511-COA-R3-JV - Filed November 18, 2009

_____

The only issue on appeal is whether the trial court erred in changing the minor child's surname. Finding no error, we affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Juvenile Court Affirmed**

ALAN E. HIGHERS, P.J.,W.S., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

David L. Hamblen, Union City, TN, for Appellant

Lisa A. Houston, Jackson, TN, for Appellee

## OPINION

### I. FACTS & PROCEDURAL HISTORY

The child at issue in this appeal was born on April 29, 2007. Two days before the child's birth, his father, Robert King, II ("Father"), filed a "Notice of Intent to Claim Paternity, Petition to Determine Paternity, and to Adopt Permanent Parenting Plan." Among other things, Father sought visitation and requested that the child be given his last name. Father's paternity was established, and following a hearing, the trial court granted Father visitation and ordered the child's name changed from Brayden Cole Conner to Brayden Cole Conner-King. The child's mother, Laranda Conner ("Mother"), timely filed a notice of appeal.

### II. ISSUES PRESENTED

On appeal, Mother contends that the trial court erred in changing the child's surname. Father contends that Mother's appeal is frivolous and seeks an award of attorney's fees. For the following reasons, we affirm the decision of the juvenile court. However, we decline to award attorney's fees to Father on appeal.

### III. STANDARD OF REVIEW

On appeal, a trial court's factual findings are presumed to be correct, and we will not overturn those factual findings unless the evidence preponderates against them. Tenn. R. App. P. 13(d) (2008); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Watson v. Watson*, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005) (citing *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999)). We review a trial court's conclusions of law under a *de novo* standard upon the record with no presumption of correctness. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).

### IV. DISCUSSION

#### A. The Child's Name

The issue of whether to change a minor child's surname is subject to an analysis based upon concern for the child's welfare. *In re A.C.S.*, No. M2008-898-COA-R3-JV, 2009 WL 348510, at *2 (Tenn. Ct. App. Feb. 12, 2009). "[P]aramount consideration must be given to what is in the best interest of the child, and the rights of the parents must yield to that concern." *Halloran v. Kostka*, 778 S.W.2d 454, 456 (Tenn. Ct. App. 1989) (citing *Riddick v. Riddick*, 497 S.W.2d 740 (Tenn. Ct. App. 1973); *Bevins v. Bevins*, 53 Tenn. App. 403, 383 S.W.2d 780, 783 (1964)). "The parent seeking to change the child's surname has the burden of proving that the change will further the

child's best interests." **Barabas v. Rogers**, 868 S.W.2d 283, 287 (Tenn. Ct. App. 1993) (citing *In re Petition of Schidlmeier*, 344 Pa. Super. 562, 496 A.2d 1249, 1253 (1985); *In re M.L.P.*, 621 S.W.2d 430, 431 (Tex. Ct. App. 1981)). Courts have generally declined to change a minor's name if only to avoid an insubstantial inconvenience or embarrassment to the child or the custodial parent, and they have approved name changes when doing so furthers the child's substantial interests. **In re Lackey**, No. 01A01-9010-PB-00358, 1991 WL 45394, at *2 (Tenn. Ct. App. Apr. 5, 1991) (citing *Laks v. Laks*, 25 Ariz. App. 58, 540 P.2d 1277, 1279-80 (1975); *Flowers v. Cain*, 218 Va. 234, 237 S.E.2d 111, 113 (1977)).

Some factors to consider in determining whether changing the child's name will be in the child's best interest include:

> (1) the child's preference, (2) the change's potential effect on the child's relationship with each parent[,] (3) the length of time the child has had its present surname, (4) the degree of community respect associated with the present and proposed surname, and (5) the difficulty, harassment, or embarrassment that the child may experience from bearing either its present or its proposed surname. *In re Saxton*, 309 N.W.2d 298, 301 (Minn. 1981); *Bobo v. Jewell*, 528 N.E.2d [38 Ohio St. 3d 330, 528 N.E.2d 180, 185 (1988)]; *Daves v. Nastros*, 105 Wash.2d 24, 711 P.2d 314, 318 (1985).

**Barabas**, 868 S.W.2d at 287. Although these criteria "may offer a court guidance" in determining whether a name change would be in the child's best interest, they "are not exclusive and obviously may not be relevant given the facts of a particular case." **Keith v. Surratt**, No. M2004-01835-COA-R3-CV, 2006 WL 236941, at *8 (Tenn. Ct. App. Jan. 31, 2006). Where a father requests that his child be given his surname, courts have also considered the nature of the father's relationship with the child. *See, e.g.*, **State of Tenn., Dep't of Human Servs. v. Sanders**, No. 03A01-9705-JV-00184, 1998 WL 8516, at *2 (Tenn. Ct. App. Jan. 13, 1998) (noting that the child "knows his father, who provides for him; a bond has developed between them, [and] he has been legitimated"); **Halloran v. Kostka**, 778 S.W.2d at 456 (noting that the father had "maintained contact with and supported [the child] throughout her life").

In this case, the trial court's order does not include factual findings regarding its best interest analysis, but the order does state, "the mother may hyphenate her name with the surname of King as she chooses, and *the mother having announced to the court that she elects to do so* and the child's name shall be Brayden Cole Conner-King." (emphasis added). We do not have a transcript of the entire hearing before the trial court. Instead, we have a statement of the evidence filed by Mother, which only consists of selected portions of the parties' testimony "as derived from the Juvenile Court's tape recording" of the hearing. The record does not include any information regarding Mother's apparent announcement to the court that she elected to hyphenate her name. Thus, it is not clear from the record whether Mother also agreed to the hyphenation of Brayden's name as some sort of compromise. In any event, we find that the evidence does not preponderate against the trial court's finding that changing Brayden's surname to Conner-King would be in his best interest.

Father testified that Mother had agreed to give Brayden Father's last name early in her pregnancy, and that she later changed her mind. Father sent financial support to Mother during her pregnancy, and he testified that he wanted to be involved in the birth, but Mother failed to notify him when Brayden was born. Mother admitted that she did not notify him of Brayden's birth despite Father's requests that she do so. Father filed his petition to establish paternity and seek visitation before Brayden was even born. At the time of the hearing, Father had only been home from serving in the military for approximately two and one-half months, but he had visited Brayden approximately once a week.

The trial judge noted that the *Barabas* factors were "not as relevant" in this case due to the child's age. Clearly, the child is too young to have a preference regarding his last name. The child was not yet born when Father filed his petition, and at the time of trial, he had only had his present surname for approximately eight months. Mother argues in her brief that "the change in the child's name does not pose any potential effect on the child's relationship with each parent." However, we find that hyphenating Brayden's last name to include Father's surname would affirm his bond with Father. Regarding the "degree of community respect" associated with either name, Father testified that he came from a "respectable, wonderful family" of elected officials, law enforcement officers, and military personnel, and he said that he planned to be "somebody that [Brayden] can be proud to have as a father." However, he acknowledged on cross-examination that his father was a convicted felon, currently serving time in the penitentiary. Father testified that he did not know of any reason why Brayden would suffer embarrassment or harassment with either name, while Mother testified that the "King" name was associated with being a "crack head." Father expressed his concern about the possibility that Mother would marry, and that Brayden would then have a last name that differed from his name and Mother's name. In *Keith v. Surratt*, No. M2004-01835-COA-R3-CV, 2006 WL 236941, at *7-8 (Tenn. Ct. App. E.S. Jan. 31, 2006), a father testified that his children might be confused if their mother remarried and their name was different from both parents' names, and the Court held that his testimony constituted sufficient proof that it was in the children's best interest for them to be given their father's name.[1]

Considering all the circumstances in this case, we cannot say that the evidence preponderates against the trial court's conclusion that it would serve Brayden's best interest to have his surname changed to Conner-King.

### B. Attorney's fees on Appeal

Father contends that he should be awarded attorney's fees because Mother's appeal is frivolous. Tennessee Code Annotated section 27-1-122 provides:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of

---

[1] We note that in *Keith*, the children were given their mother's last name when they were born, which was not her maiden name but the name she retained after divorcing her first husband. 2006 WL 236941, at *7.

its own motion, award just damages against the appellant, which may include but
need not be limited to, costs, interest on the judgment, and expenses incurred by the
appellee as a result of the appeal.

The decision to award damages for the filing of a frivolous appeal rests solely in the discretion of
this Court. **Whalum v. Marshall**, 224 S.W.3d 169, 180-81 (Tenn. Ct. App. 2006) (citing *Banks v.
St. Francis Hosp.*, 697 S.W.2d 340, 343 (Tenn. 1985)). "Successful litigants should not have to bear
the expense and vexation of groundless appeals." **Id.** at 181 (quoting *Davis v. Gulf Ins. Group*, 546
S.W.2d 583, 586 (Tenn. 1977)). An appeal is frivolous when it has "no reasonable chance of
success" or is "so utterly devoid of merit as to justify the imposition of a penalty." **Id.** (citing
*Combustion Eng'g, Inc. v. Kennedy*, 562 S.W.2d 202, 205 (Tenn. 1978); *Jackson v. Aldridge*, 6
S.W.3d 501, 504 (Tenn. Ct. App. 1999)). We exercise our discretion under this statute sparingly so
as not to discourage legitimate appeals. **Id.** In this case, we find it equitable to decline to award
attorney's fees.

## V. CONCLUSION

For the aforementioned reasons, we affirm the decision of the juvenile court. Costs of this
appeal are taxed to the appellant, Laranda Conner, and her surety, for which execution may issue if
necessary.

_____
ALAN E. HIGHERS, P.J., W.S.