# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### August 24, 2010 Session

## JOHNATHAN LEONARD SULLIVAN v. TRACY L. BROOKS

**Appeal from the Juvenile Court for Putnam County**
**No. 3612     Nolan Goolsby, Judge**

---

**No. M2009-02510-COA-R3-JV - Filed May 23, 2011**

---

Mother appeals trial court's decision to change the parties' nonmarital child's surname to that of the father. Finding that the father failed to meet his burden of proving that a name change was in the child's best interest, we reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Reversed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Derrick H. Green, Mt. Juliet, Tennessee, for the appellant, Tracy L. Brooks.

Michael R. Giaimo, Cookeville, Tennessee, for the appellee, Johnathan Leonard Sullivan.

## OPINION

This appeal concerns the trial court's decision to change the surname of the parties' child to that of the father, Johnathan Sullivan ("Father"). The parties, who were never married to each other, are parents of a child born in 2008. Eight days after the birth of the parties' child, Father filed a Petition to Establish Parentage. The petition included a request to change the child's surname which the mother, Tracy L. Brooks ("Mother"), opposed.

The trial court held a hearing in September 2009 on Father's petition and entered an order establishing parentage, visitation and child support. The parties do not challenge the trial court's decision on these issues. The trial court's final order, however, changed the child's surname from that of the Mother to that of the Father. Mother then filed this appeal solely on the issue of the child's proper surname.

The issue before this court was authoritatively addressed in *Barabas v. Rogers*, 868 S.W.2d 283 (Tenn. Ct. App. 1993), which traced the history of how the designation of children's surnames was developed, including those of nonmarital children. After discussing the common law practice that children born of marriage took the father's surname and children born out of wedlock took the mother's surname, the court made the following findings:

> The portions of Tennessee's vital records statutes dealing with birth certificates reflect many of these customs and common law principles. The birth certificate of a child born to married parents must show that the child's surname is that of its biological father unless both parents request another name. Tenn. Code Ann. § 68–3–305(a). On the other hand, the birth certificate of a child born to an unmarried mother must reflect that the child's surname is that of the mother unless both parents have requested otherwise. Tenn. Code Ann. § 68–3–305(b)(1).

> Later legitimation or paternity proceedings do not necessarily result in changing the nonmarital child's surname appearing on its birth certificate. The child's name is not automatically changed if its parents marry later. Tenn. Code Ann. § 36–2–207 (1991). Likewise, a nonmarital child's surname is not changed following a paternity or legitimation proceeding unless the court orders that the name be changed. Tenn. Code Ann. §§ 36–2–208, 36–2–206(b), 68–3–305(c); *see also* Tenn. Comp. R. & Regs. 1200–7–1–.04(3)–(5) (1989).

> The courts should not change a child's surname unless the change promotes the child's best interests. *Halloran v. Kostka*, 778 S.W.2d 454, 456 (Tenn. Ct. App.1988); *see also In re Marriage of Schiffman*, 169 Cal.Rptr. 918, 921, 620 P.2d 579, 582 (1980); *In re Cardinal*, 611 A.2d at 517; KRISTINE C. KARNEZIS, Annotation, *Rights and Remedies of Parents Inter Se With Respect to the Name of Their Children*, 92 A.L.R.3d 66 § 8.5 (Supp.1992). Among the criteria for determining whether changing a child's surname will be in the child's best interests are: (1) the child's preference, (2) the change's potential effect on the child's relationship with each parent (3) the length of time the child has had its present surname, (4) the degree of community respect associated with the present and proposed surname, and (5) the difficulty, harassment, or embarrassment that the child may experience from bearing either its present or its proposed surname. *In re Saxton*, 309 N.W.2d 298, 301 (Minn.1981); *Bobo v. Jewell*, 528 N.E.2d at 185; *Daves v. Nastros*, 105 Wash.2d 24, 711 P.2d 314, 318 (1985). The parent seeking to change the child's surname has the burden of proving that the change will further the

-2-

child's best interests. *In re Petition of Schidlmeier*, 344 Pa. Super. 562, 496 A.2d 1249, 1253 (1985); *In re M.L.P.*, 621 S.W.2d 430, 431 (Tex. Ct. App.1981).

868 S.W.2d at 287.

In the transcript of the proceedings herein, the trial court discussed its decision to revise the child's surname to that of Father's as follows:

All right. The issue of name change. The Court finds it's in the best interest of the child to allow a name change, that the child have his father's surname. In all probability, Ms. Brooks -- you're at a young age --you will marry. And if you marry, you will probably, tradition and custom, take on your husband's name. I have got two young folks that most likely will marry.

I know the child is not of age to yet read and write his name. Tradition and custom in this country, in this area, basically, is to take on the father's name. There is certainly nothing about the Brooks name or Sullivan name that carries any derogatory reputation in this community.

I have had cases where children carry the maiden name and mom marries a couple of times, and then you have three children by three different names. And that raises the issue – certainly, there's an inconsistency there when they are in school, and kids can be rather cruel to other kids and hurt – you know, be made fun of when brothers and sisters have different names, none of them the father's name. Kids know who their father are. He will know soon. You know, and the father has been, the proof is, active from birth and very involved, he's supported, and therefore I find it in the best interest that [child's] last name be changed to Sullivan.

Both parties agree that the issue to be decided on appeal is whether Father met his burden of proving, by a preponderance of the evidence, that changing the surname to Sullivan was in the child's best interest.

Mother argues, in effect, that Father offered no evidence to support the name change. Father argues that the trial court did not err in applying the factors enunciated in *Barabas* and that its decision should be upheld, although Father has not cited to the record for any evidence related to the relevant factors.

At trial, Mother and Father both testified, and no other witnesses were heard. Father

testified regarding his request to change the child's last name as follows:

> I would like for it to be Sullivan. I'm his father. I've been there since day one. I was there at birth. When she told me that she wasn't going to name it after me, I still stayed. I mean, ever since day one I have been there. That's my son. I would love for him to have my last name. I mean, my family is really big on last names. Ever since I have been brought up they have always told me that you are a Sullivan, that, you know, you live up to your last name.

Father was then asked if he was "into hyphens or anything like that," and replied:

> I mean, why should I have to explain to my son why he has two last names? I shouldn't have to. He's my son.

Mother testified that she wanted the child's last name to remain Brooks because he lived with her and her parents, all of whom have that last name.

A parent's wish that a child's surname be changed is not sufficient to justify such relief. A parent's preference is not enough; it is not evidence that a name change is in the child's best interest. *Whited v. Fleenor*, 2003 WL 1092968, at * 2-3 (Tenn. Ct. App. March 13, 2003).

Tennessee courts have considered requests for name changes similar to the one made by Father herein, *i.e.*, requests by fathers who established paternity of their child born out of wedlock where the child's birth certificate listed the mother's surname. In *Brown v. Baird*, 1997 WL 638278 (Tenn. Ct. App. October 17, 1997), the trial court granted the father's request that the child's surname be changed to a hyphenated name that included his and the mother's surnames "in order to reflect his parentage." On appeal, this court held that the father's wish to reflect his heritage and his mere belief or opinion that the hyphenated surname he requested would not adversely impact the child were not sufficient to carry his burden as the party requesting the name change. *Id.* at *2.

This court began its analysis with the statutory requirement that a nonmarital child's name be that of its mother and then recognized that a biological father, along with anyone else, seeking to change that surname has the burden of proving that changing the child's surname is in the child's best interest. *Id.* at *1-2 (citing *Halloran v. Kostka*, 778 S.W.2d 454, 456 (Tenn. Ct. App. 1988)). Additionally, we noted that "[t]he amount of proof required to justify changing a child's surname is not insubstantial. *Id*. at *1.

In *Whited v. Fleenor*, 2003 WL 1092968, the father testified that he believed that changing his son's surname to his own was in the child's best interest because he, the father, wanted his son "to know who his father is and go by his father's name and carry on the Whited name." *Id*. at *1. The mother testified that the child had been christened with her surname, had medical records in that name, and that she did not feel the child should have a different name from hers since they lived in the same house together. *Id*. The trial court granted the name change stating it did not see any difference from the situation where parents had been married and gotten divorced and the children kept the father's name. *Id*. This court reversed and found that the father's stated reasons for the name change fell short of meeting his burden of proof, *i.e.*, that the change was in the child's best interest. *Id*. at *3.

In *In re A.C.S.*, 2009 WL 348510 (Tenn. Ct. App. Feb. 12, 2009), this court applied the *Barabas* factors as well as the requirement of more than insubstantial proof and held that the father had failed to demonstrate that using the father's surname would be "anymore beneficial to the child than using the surname of Mother." *Id*. at *3. Accordingly, we reversed the trial court's order changing the child's name.

The General Assembly has established the policy in this state that a child of unmarried parents bear the surname of its mother, absent agreement to another name. The legislature has also determined that a nonmarital child's surname is not automatically changed following a paternity or legitimation proceeding and, in fact, should not be changed without proof that such a change is in the child's best interest.

Based upon the authority set out herein, the evidence offered at trial, and the trial court's statement of reasons for granting the change, we conclude that Father did not meet his burden of proving that changing the child's name to Sullivan is in the child's best interest. Accordingly, we must reverse.

The trial court's order changing the surname of the child is reversed. Costs of appeal are taxed to Jonathan Leonard Sullivan, for which execution may issue if necessary.

_____

PATRICIA J. COTTRELL, JUDGE