# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### February 22, 2013 Session

## ANGELA CARROLL v. ROBERT CORCORAN

**Appeal from the Circuit Court for Sumner County**
**No. 2011-CV-1058     C. L. Rogers, Judge**

---

**No. M2012-01101-COA-R3-CV - Filed May 29, 2013**

---

Unmarried Father and Mother of infant child filed petitions to establish initial custody, calculate parenting time, set child support, and determine residential sharing schedule. Father sought to have the child bear his surname. The trial court entered a parenting plan and denied Father's request to change the child's surname. Father appeals and assigns as error certain parenting plan provisions, the trial court's award to Mother of her attorney fees, and the trial court's decision not to change the child's surname. Mother appeals the trial court's calculation of the number of days of parenting time for purposes of determining child support. Finding that the court miscalculated the number of days of parenting time, we remand for a redetermination of child support. We also remand the attorney fee award for reconsideration. In all other respects, we affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated in Part, Affirmed in Part, and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., and RICHARD H. DINKINS, JJ., joined.

B. Lynn Morton and Nick T. Tooley, Franklin, Tennessee, for the appellant, Robert Corcoran.

Russell E. Edwards and Michael W. Edwards, Hendersonville, Tennessee, for the appellee, Angela Carroll.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

This appeal concerns the parenting plan for Alivia Carroll, a child born to Angela

Carroll ("Mother") and Robert Corcoran ("Father") on July 26, 2011. Neither parent has other children. Mother and Father ended their relationship during the pregnancy and have not lived together since the child's birth. Father resides in Robertson County; since birth, the child has resided with Mother in Sumner County. Although Father visited Alivia after she was born, he and Mother could not agree to a visitation schedule so, on August 26, 2011, Mother and Father each filed similar petitions to establish a parenting plan in their respective counties of residence.[1]

Mother's petition, filed in Sumner County, sought the establishment of a parent-child relationship between Father and Alivia,[2] absolute custody, child support dating back to the child's birth, reimbursement for hospital expenses, the cost of the child's care since birth, and attorney fees. Father's pro se petition, filed in Robertson County, is not in the record, but he testified that he filed it to "get [his] parental rights, to set custody, [and] to set child support." On September 26, 2011, Father pro se filed a motion to dismiss Mother's petition in Sumner County. Mother then filed a motion to dismiss Father's petition, and the Robertson County court granted her motion. After a hearing and by order entered October 18, 2011, the Sumner County circuit court denied Father's motion to dismiss Mother's petition because Mother's petition had been filed first. Therefore, the case proceeded in Sumner County.

On November 22, 2011, Father, now represented by counsel, answered Mother's petition and counter-petitioned for implementation of his proposed parenting plan. In his counter-petition, Father submitted that Mother should be Alivia's primary residential parent, requested "substantial time" with Alivia, and sought to change her surname to Corcoran. Mother submitted a proposed parenting plan on the hearing date, January 31, 2012.[3]

Following the hearing and by order entered February 9, 2012, the trial court fashioned a parenting plan such that Mother was designated primary residential parent and Father would have the child for a few hours on Sundays and Thursdays through March 1, 2012, for an overnight visit on March 9, and, beginning March 23, 2012, for every other weekend and every Thursday from 11 a.m. until 6 p.m. Furthermore, the trial court denied Father's request that the child receive his surname and, based upon her attorney's affidavit, awarded Mother $2,576.50 in attorney fees.

---

[1] When pro se filing his petition, Father did not know that Mother had, through her attorney, filed a petition in Sumner County just hours beforehand.

[2] This relationship was not disputed. Father attended Alivia's birth, signed her birth certificate, and executed a "Voluntary Acknowledgment of Paternity." *See* Tenn. Code Ann. § 36-2-304.

[3] The evidence adduced at the hearing will be presented in greater detail below as relevant to the issues on appeal.

Father moved to set aside or amend the order, for an evidentiary hearing on the issue of changing the child's surname, and for a new trial. Father averred that the trial court should have given him mid-week parenting time from Wednesday evenings at 6 p.m. until Thursday evenings at 6 p.m. and that the court erred in its calculation of parenting days, award of attorney fees to Mother, and assignment of all transportation costs to him. Father also took issue with certain restrictions contained in the February 9, 2012 parenting plan such as, "No overnight guests of the opposite sex in the presence of the minor child."

The trial court heard these post-trial motions on April 11, 2012 and, by amended order and parenting plan entered April 19, 2012, struck certain provisions contained in the prior plan, including the overnight guest provision, denied the rest of Father's requests, and changed the yearly residential time as follows: 259 days to Mother and 106 days to Father.

Father appeals.

STANDARD OF REVIEW

In cases involving parenting plans and the designation of a primary residential parent, we review the trial court's findings of fact de novo with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002). A trial court's conclusions of law are subject to a de novo review with no presumption of correctness. *Nelson v. Nelson*, 66 S.W.3d 896, 901 (Tenn. Ct. App. 2001) (citing *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997)). Appellate courts are reluctant to second-guess a trial judge's determination regarding permanent parenting arrangements. *See Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997). While we accord trial courts broad discretion in these matters, "they must still base their decisions on the proof and upon the appropriate application of the applicable principles of law." *Thompson v. Thompson*, No. M2011-02438-COA-R3-CV, 2012 WL 5266319, at *5 (Tenn. Ct. App. Oct. 24, 2012). However, it is not the role of appellate courts to "tweak [parenting plans] in the hopes of achieving a more reasonable result than the trial court." *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001). Thus, a trial court's decision regarding a permanent parenting plan will be set aside only when it "falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Id*.

ANALYSIS

On appeal, Father and Mother raise several issues for our review which we will address in turn.

I. Overnight Guest Provision

Father challenges the parenting plan provision "prohibiting [him] from having overnight guests of the opposite sex with the child present and failing to impose a similar restriction on [Mother]," and requests that this Court either strike the provision or impose it on both parties. Mother maintains that the restriction should apply to both parties.[4]

This is a nonissue. The original parenting plan entered February 9, 2012, contained seven restrictions within the section entitled "Decision Making." The first one reads, "No overnight guests of the opposite sex in the presence of the minor child." During the hearing on Father's post-trial motions, the trial court concluded that "conditions one, two, and three, the Court just simply overlooked. I had no evidence, no reason to even be thinking in terms of including those type conditions, so take those out." The trial court's ruling on this issue is memorialized in its final order:

> c. Decision making (B) Other, page 3 of the original parenting plan is modified to delete provisions 1, 2, and 3.

Consistent with the trial court's order, the amended parenting plan entered April 19, 2012 contains only four of the seven original restrictions:

> **B. OTHER**: (1) The Father must be present for all visitation with the child unless he is needed at work (2) The Father will provide proof that someone else will be taking an emergency call from the gun store in the middle of the night, while the child is in his care (3) The Father must lock up or remove all guns prior to the child arriving at his home (4) The Father is not permitted to stay overnight with the child at a non family member's home.

Having reviewed the record, we find that the trial court did not abuse its discretion in incorporating only the four restrictions above into the amended parenting plan. With no finding that the overnight guest provision would serve Alivia's best interest, the trial court correctly took it out of the parenting plan. *See Barker v. Chandler*, No. W2008-02255-COA-R3-CV, 2009 WL 2986105, at *4 (Tenn. Ct. App. Sept. 18, 2009).

## II. Wednesday Night Parenting Time

Father contends that the trial court erred in failing to award him substantial parenting

---

[4] From our reading of the original parenting plan, the "overnight guest of the opposite sex" provision has always applied to both parties because the other six provisions specify that they apply to "The Father," whereas the overnight guest provision does not.

time with Alivia. Specifically, Father challenges the trial court's parenting plan to the extent that his mid-week parenting time was set for Thursdays from 11:00 a.m. until 6:00 p.m. instead of Wednesdays at 6:00 p.m. until Thursdays at 6:00 p.m., as requested in his proposed parenting plan. His proposal, Father argues, would eliminate the need for "the child to stay unnecessarily with a babysitter one day a week."

Because "'the details of custody and visitation with children are peculiarly within the broad discretion of the trial judge,'" we review issues of parenting time for an abuse of discretion. *Eldridge* 42 S.W.3d at 85 (*quoting Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1998)). "[A]ppellate courts will decline to disturb a parenting plan fashioned by a trial court unless that decision is based on application of an incorrect legal standard, is against logic or reasoning, or is not supported by a preponderance of the evidence." *Cummings v. Cummings*, No. M2003-00086-COA-R3-CV, 2004 WL 2346000, at *5 (Tenn. Ct. App. Oct. 15, 2004).

In this case, the trial court adopted parts of Mother's and parts of Father's proposed parenting plans in fashioning a plan that would serve Alivia's best interest. In fact, the trial court awarded Father more parenting time than he proposed–such as every other spring and fall break and two weeks in the summer–thus following the mandate of Tenn. Code Ann. § 36-6-106(a) to "order a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child" consistent with all of the statutory factors. In considering Alivia's best interest and Father's request to modify the mid-week parenting time, the trial court reasoned:

> I've given the Father every Thursday from eleven a.m. to six p.m. That decision was driven by the testimony of his work schedule and his schedule after work, which did include Wednesdays.[5]
>
> I don't recall much effort put or suggestions that [the Wednesday trivia night] would be given up or that would be changed, and I didn't see it as any big deal and just sort of trying to follow what the Father's usual schedule was and that, in my opinion, being in the child's best interest. There just wasn't enough testimony in there for me to assume that [trivia night] would definitely stop. Nothing wrong with what the Father was doing.

Although Father testified that he would forgo Wednesday trivia night, we cannot conclude that the evidence preponderates against the trial court's decision or that the court abused its discretion in its assignment of parenting time to Mother and Father.

---

[5] The Father's Wednesday "schedule after work" refers to a weekly trivia night with his friends.

### III. Transportation Arrangement

Per the parenting plan, Father is to pick up and return Alivia to Mother's residence when exercising his parenting time. Father "submits that it was grossly inequitable and an abuse of discretion to have him bear all the costs and time invested with transporting the child" and that "[t]his was a completely arbitrary decision on the part of the trial court." We disagree. Mother testified that she commutes from Hendersonville to her job in Brentwood causing her to be away from home for nine hours each weekday. Father testified that, as part owner of his own business, he enjoys a flexible work schedule and does not work on Thursdays. The trial court explained:

> Transportation, I didn't hear any real issue about transportation. The Father is in Greenbrier, and he seemed to have a more easy method of work time and work schedule. That went into my decision. Greenbrier and Hendersonville [are] like neighbors almost. It's not that far. And because the Father's ease of work schedule because of his business, that's why I put the obligation of transportation on the Father . . . . I did consider Mother's work schedule and she can't just up and walk out.

We find no abuse of discretion in the trial court's decision.

### IV. Calculation of Parenting Days

In the posture of appellee, Mother raises for our review the trial court's calculation of the number of days per year that each parent exercises parenting time for purposes of setting child support. Specifically, Mother contends that she and Father spend 285 days and 80 days with the child, respectively, rather than 259 days and 106 days, as the trial court found. Father has not addressed this issue.

Under the amended parenting plan, Father has the child every other weekend from Friday at 6:00 p.m. to Sunday at 6:00 p.m. and every Thursday from 11:00 a.m. until 6:00 p.m. Each parent exercises two weeks of summer vacation with the child. Mother has the child on Mother's Day and on her birthday, as does Father on Father's Day and on his birthday. The plan requires the child to alternate other holidays between the parents, e.g., spending New Year's Day with Mother during even-numbered years and with Father during odd-numbered years. For fall break, Mother has the child during even-numbered years and Father has her during odd-numbered years. For spring break, Mother has the child during

odd-numbered years and Father has her during even-numbered years.[6]

The Child Support Guidelines promulgated by the Department of Human Services define "days" for the purpose of calculating child support as follows:

> For purposes of this chapter, a "day" of parenting time occurs when the child spends more than twelve (12) consecutive hours in a twenty-four (24) hour period under the care, control or direct supervision of one parent or caretaker. The twenty-four (24) hour period need not be the same as a twenty-four (24) hour calendar day. Accordingly, a "day" of parenting time may encompass either an overnight period or a daytime period, or a combination thereof.

Tenn. Comp. R. & Regs. 1240-2-4-.02(10).

The record does not provide information regarding the trial court's method of calculating parenting time. Our application of Tenn. Comp. R. & Regs. 1240-2-4-.02(10) to the schedule set forth in the amended parenting plan establishes that Father should be credited for 80 days per year of parenting time.[7] That would leave 285 parenting days for Mother. Because the trial court erroneously used 259 days and 106 days as the number of parenting days for Mother and Father, respectively, we must remand for a redetermination of child support under the Guidelines based on Father's 80 days of parenting time and Mother's 285 days of parenting time.

### V. Changing the Child's Surname

Father assigns error to the trial court's denial of his request to change Alivia's surname to his surname, Corcoran. At oral argument, Father stated that he would also accept Carroll-Corcoran as Alivia's last name. Mother strongly opposes changing or hyphenating the child's last name.

As Father concedes, a child born to an unmarried mother takes its mother's surname. Tenn. Code Ann. § 68-3-305(b)(1); *Barabas v. Rogers*, 868 S.W.2d 283, 287 (Tenn. Ct. App. 1993). This Court has previously addressed the issue of changing a child's surname:

---

[6] The parties have agreed to count fall and spring breaks even though Alivia has yet to begin school.

[7] Using a 2013 calendar, we arrive at this number by counting New Year's Day, President's Day, Memorial Day Weekend, Father's Day, Independence Day, Thanksgiving Weekend, one day for Father's birthday, 14 days for summer vacation, two days every other weekend, and assuming five days for fall break.

The courts should not change a child's surname unless the change promotes the child's best interests. *Halloran v. Kostka*, 778 S.W.2d 454, 456 (Tenn. Ct. App. 1988); *see also In re Marriage of Schiffman*, 169 Cal. Rptr. 918, 921, 620 P.2d 579, 582 (1980); *In re Cardinal*, 611 A.2d at 517; Kristine C. Karnezis, Annotation, *Rights and Remedies of Parents Inter Se With Respect to the Name of Their Children*, 92 A.L.R.3d 66 § 8.5 (Supp. 1992). Among the criteria for determining whether changing a child's surname will be in the child's best interests are: (1) the child's preference, (2) the change's potential effect on the child's relationship with each parent, (3) the length of time the child has had its present surname, (4) the degree of community respect associated with the present and proposed surname, and (5) the difficulty, harassment, or embarrassment that the child may experience from bearing either its present or its proposed surname. *In re Saxton*, 309 N.W.2d 298, 301 (Minn. 1981); *Bobo v. Jewell*, 528 N.E.2d at 185; *Daves v. Nastros*, 105 Wash.2d 24, 711 P.2d 314, 318 (1985). The parent seeking to change the child's surname has the burden of proving that the change will further the child's best interests. *In re Petition of Schidlmeier*, 344 Pa.Super. 562, 496 A.2d 1249, 1253 (1985); *In re M.L.P.*, 621 S.W.2d 430, 431 (Tex. Ct. App. 1981).

*Barabas*, 868 S.W.2d at 287.

At trial, Father testified that Alivia's having his surname is "one of the most important things to [him]." He further explained, "It's my only child. I don't know if I'll ever have another one, but it's important to me for her to have my last name, the last name of the family. She has a huge Corcoran family, and they are all here in Middle Tennessee." On appeal, Father notes that the child does not have other relations who live in Tennessee and have the last name Carroll.[8] The trial court discussed its decision to deny Father's request:

Name change, I've been asked to reconsider that. The request is all I had at trial. The burden was on the Father to introduce almost like a comparative proof for the Court to make a decision and that would require evidence. There was just nothing other than a request; so that was the reason that was denied. I can't strain and try to make inferences or anything. The Father just didn't carry that burden.

We agree with the trial court and reiterate that "[a] parent's wish that a child's

---

[8] On appeal, Father also states that "should [Mother] ever marry and take her husband's surname, the child would be the only person in that household with the surname 'Carroll'." We decline to weigh such an assumption in our analysis.

surname be changed is not sufficient to justify such relief" and that a parent's preference that the child share his or her surname "is not evidence that a name change is in the child's best interest." *Sullivan v. Brooks*, No. M2009-02510-COA-R3-JV, 2011 WL 2015516, at *3 (Tenn. Ct. App. May 23, 2011) (No Tenn. R. App. P. 11 application filed).

Father's proffered reasons to change Alivia's surname do not amount to his carrying the burden of proof by a preponderance of the evidence. Accordingly, we affirm the trial court's decision on this issue.

## VI. Attorney Fees

Lastly, Father argues that the trial court's award of $2,576.50 in attorney fees to Mother was excessive and inappropriate, especially considering "Father's forthrightness in accepting his paternity of Alivia and its accompanying obligations." Mother insists that the attorney fee award was warranted because "[t]his case was very difficult to even bring to trial," given the time and effort her attorney expended in seeking to dismiss Father's Robertson County petition and in defending against Father's motion to dismiss her Sumner County petition.

Tennessee abides by the American Rule regarding the payment of attorney fees. *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 194 (Tenn. 2000). The rule requires litigants to pay their own attorney fees unless a statute or an agreement provides otherwise. *Id*. At trial, Mother testified that she intended to seek her attorney fees "under the statute." The record is silent as to "the statute" under which Mother is entitled to attorney fees. We assume Mother refers to either Tenn. Code Ann. § 36-5-103(c) which provides:

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, *or in regard to any suit or action concerning the adjudication of the custody* or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.[9]

---

[9] In *In re Lamont B., II*, No. M2004-02027-COA-R3-JV, 2006 WL 1727332 (Tenn. Ct. App. June 23, 2006), a case like the one before us involving the initial custody determination for a child born out of wedlock, we noted that Tenn. Code Ann. § 36-5-103(c) "does not limit recovery of attorney's fees to divorcing spouses who are parents of the child, but also includes 'other persons to whom custody of the child,

(continued...)

(emphasis added) or to Tenn. Code Ann. § 36-2-311(a)(14) which provides that "[u]pon establishing parentage, the court shall make an order declaring the father of the child" which "shall include . . . [d]etermination of the liability for counsel fees to either or both parties after consideration of all relevant factors."

Where a trial court has discretion to award attorney fees, appellate courts do not interfere except upon a showing of an abuse of discretion. *Taylor v. Fezell*, 158 S.W.3d 352, 359 (Tenn. 2005); *Threadgill v. Threadgill*, 740 S.W.2d 419, 426 (Tenn. Ct. App. 1987). Furthermore, where a trial court has awarded attorney fees, but there is nothing in the record to indicate that the trial court actually evaluated the fee amount for reasonableness in light of the appropriate factors, the correct approach for an appellate court "is to vacate the award and 'remand [the] case to the trial court for a new determination of an attorney's fee award under [Supreme Court Rule 8, RPC 1.8] and the applicable case law.'" *First Peoples Bank of Tenn. v. Hill*, 340 S.W.3d 398, 410 (Tenn. Ct. App. 2010) (quoting *Ferguson Harbour Inc. v. Flash Market, Inc.*, 124 S.W.3d 541, 553 (Tenn. Ct. App. 2003)).

In this case, the trial court did consider the reasonableness of the attorney fee award. The trial court considered both parties' arguments and Mother's attorney's affidavit detailing the work on Mother's behalf and explained:

> Attorney's fees, those were awarded, and I found the amount to be reasonable. Those were awarded because in this case we have a pro se [litigant]. And, for good or bad, if someone attempts to represent themselves, things like this can–it's not punishment, but by their lack of understanding in the law, they cause unnecessary fees. It's not fair for the opposing party, who does have an attorney, to have to pay their attorney because a pro se person doesn't understand what they're doing and they're costing the other party fees. I didn't award [Mother's attorney] his whole fee; it was 50 percent, about what I could make for running up and down the highways and going to court.

From our reading of Mother's attorney's affidavit, she incurred $1,675 in attorney fees in bringing this case to trial and remedying Father's procedural missteps at the time he was proceeding pro se. It appears, however, that at least some of the fees were awarded for dealing with Father's petition filed in Robertson County. We are unaware of any authority, and have been provided none, that allows a court to award attorney fees in one case for actions taken in another case. Therefore, we remand the attorney fee issue to the trial court

---

[9](...continued)
or children, is awarded.'" *In re Lamont B., II*, at *4 (citing Tenn. Code Ann. § 36-5-103(c); *Stephenson v. West*, No. W1998-00668-COA-R3-CV, 2000 WL 52899, at *9 (Tenn. Ct. App. Jan. 13, 2000)).

for reconsideration of the fee award.  We decline to award Mother attorney fees on appeal.

CONCLUSION

For the foregoing reasons, we remand this case for a redetermination of child support in accordance with the number of days for each parent and for reconsideration of the attorney fee award.  In all other respects, we affirm the trial court's order.  Costs of appeal are assessed against the appellant, Robert Corcoran, and execution may issue if necessary.


_____
ANDY D. BENNETT, JUDGE